**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN B. LESESNE,** | |
| Plaintiff, | |
| v. | Case No. 10-cv-00602 (CRC) |
| **DISTRICT OF COLUMBIA,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Lesesne alleges that he suffered physical injuries and emotional distress due to negligent treatment by the District of Columbia Department of Corrections ("DOC") following his arrest and subsequent hospitalization for a gunshot wound. Defendant District of Columbia moves for summary judgment on the two of Lesesne's claims that survived the District's previous motion to dismiss—negligence and negligent infliction of emotional distress. Because expert testimony is required to establish each of these claims and Lesesne has not presented such testimony, and because he has not made the required showing for negligent infliction of emotional distress, the Court will grant the District of Columbia's motion.

**I.   Background**

The factual allegations and procedural background of this dispute were summarized in the Court's opinion on Defendants' motion to dismiss:

> Lesesne was shot in the abdomen by his brother, a D.C. police officer, who, according to a police report, Lesesne had attacked with a knife. Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 1 at 2. He was arrested and taken to a nearby hospital where he underwent surgery. During his ensuing hospital stay, Lesesne was in the custody of the District of Columbia Department of Corrections ["DOC"]. In his amended complaint, Lesesne allege[d] that DOC personnel continuously handcuffed him to his bed and ignored his attending physicians' requests that he be allowed to receive physical and occupational therapy, causing long-term injury. Id.

1

> ¶¶ 15–18. Later, when the hospital discharged him, DOC officers allegedly made Lesesne walk to a transport vehicle while shackled and then dropped him, causing a pulmonary embolism. Id. ¶¶ 20–22. After a second trip to a hospital and a return to the D.C. Jail, Lesense claims he contracted a staph infection because DOC denied him adequate medical treatment. Id. ¶¶ 26–28.
>
> Lesesne brought suit in this Court against the DOC, the District of Columbia and three individuals: an unnamed DOC officer that oversaw his detention; Captain David Holmes, a DOC employee; and Henry R. Lesansky, a DOC health services administrator. His initial complaint listed sixteen claims, including for violations of the Fourth, Eighth, and Fourteenth Amendments, and intentional infliction of emotional distress. Compl. ¶¶ 27–42. Judge Wilkins, who was previously assigned to this case, granted the District's motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act, Pub. L. 104–134, 110 Stat. 1321, and for failure to state a claim for intentional infliction of emotional distress. Order, Dkt. 32 (Sept. 30 2011). The D.C. Circuit reversed as to Lesesne's federal claims. Mandate, Dkt. 35 (June 4, 2014). After remand, Lesesne filed an amended complaint alleging a violation of the Eight Amendment's prohibition against cruel and unusual punishment pursuant to 42 U.S.C. § 1983, negligence, and negligent infliction of emotional distress. The Defendants move[d] to dismiss, or alternatively for summary judgment, as to Lesesne's constitutional claims against the District of Columbia and Dr. Lesansky, and his claims for negligence and negligent infliction of emotional distress against all Defendants.

Lesesne v. Doe, 65 F. Supp. 3d 1, 3–4 (D.D.C. 2014). The Court granted the Defendants' motion to dismiss as to the "constitutional claims against the District of Columbia, all claims against the DOC, all claims against individual defendants in their official capacities, and all claims against Dr. Lesansky in any capacity," id. at 8, but denied the motion as to Lesesne's negligence and negligent infliction of emotional distress ("NIED") claims against the District of Columbia.

The District now moves for summary judgment on those two claims, arguing that the claims fail because Lesesne has not proffered expert testimony in support of his negligence claim and because he has not established negligence or fear as required for his NIED claim. Because expert testimony is required to establish both claims and Lesesne has not proffered such testimony, and because Lesesne has not demonstrated that there was a special relationship between him and the District of Columbia or that the zone of danger rule applies with respect to

his negligent infliction of emotional distress claim, the Court will grant the District of Columbia's motion for summary judgment.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). At the summary judgment stage, the court draws all justifiable inferences in the nonmoving party's favor. Anderson, 477 U.S. at 255. But the nonmoving party may not rely solely on allegations or conclusory statements and instead must demonstrate facts that would enable a reasonable jury to find in her favor. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). "The moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Anderson, 477 U.S. at 250).

## III. Analysis

### A. Negligence

Lesesne alleges that the District of Columbia owed him a special duty of care while he was in the DOC's custody. According to Lesesne, the District breached its duty by "failing to provide or allow medical rehabilitation services [to be provided to Lesesne] as requested by [his] attending physician(s) while [he] was in their custody." Am. Compl. ¶ 41. And the breach of that duty, Lesesne contends, proximately caused his current physical limitations and disability, which he describes as being recognized by the Social Security Administration. The District responds that Lesesne's negligence claim must fail because its success hinges on testimony by an

expert as to the standard of care for detainment, the standard of care for rehabilitation, and medical causation, which Lesesne has not presented.

Under District of Columbia law, a "plaintiff in a negligence action bears the burden of proof on three issues: 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" Toy v. District of Columbia, 549 A.2d 1, 6 (D.C. 1988) (quoting Meek v. Shepard, 484 A.2d 579, 581 (D.C. 1984)). Expert testimony is not required if the "alleged negligent act is 'within the realm of common knowledge and everyday experience.'" Id. (quoting District of Columbia v. White, 442 A.2d 159, 164 (D.C. 1982)). However, "a plaintiff is required to put on expert testimony where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.'" Id. (quoting District of Columbia v. Peters, 527 A.2d 1269, 1273 (D.C. 1987)).

District of Columbia courts have required expert testimony regarding the standard of care required of police officers in using and discharging their firearms, Fletcher v. District of Columbia, No. 01-cv-0297, 2005 WL 670676, at *6 (D.D.C. 2005) (citing White, 442 A.2d at 164–65); police officers in using force to break up a fight, Smith v. District of Columbia, 882 A.2d 778, 793 (D.C. 2005); and doctors accused of medical malpractice, Washington v. Wash. Hosp. Ctr., 579 A.2d 177, 181 (D.C. 1990). These cases instruct that, where the standard of care at issue arises from a particular occupational setting, and depends on knowledge of typical practices by professionals of that occupation, a plaintiff cannot establish a negligence claim against such a professional—for actions taken in her professional capacity—without proffering expert testimony as to the standard of care particular to that occupational setting. In addition, where the causation alleged in support of a negligence claim concerns the relationship between a

deviation from a standard of care and a plaintiff's medical injury, courts require expert testimony as to causation as well. See id.; Psychiatric Inst. of Wash. v. Allen, 509 A.2d 619, 623–24 (D.C. 1986). Here, Lesesne alleges that DOC officers breached their duty to provide the standard of care owed to him by keeping his arms and legs restrained throughout his recovery at the hospital, exacerbating his injuries, and by preventing him from receiving physical and occupational therapy as well as other rehabilitation recommended by his doctors, lengthening his recovery time. See Am. Compl. ¶¶ 13–18, 39–46.

Because Lesesne's negligence claim requires proving that the agency in fact breached that duty of care to him, proximately resulting in his medical injuries, expert testimony is necessary to support his claim. And because Lesesne merely asserts the elements of this claim without providing expert testimony in support, the Court will grant the DOC's motion for summary judgment as to this claim. See Edwards v. Okie Dokie, Inc., 473 F. Supp. 2d 31, 45 (D.D.C. 2007) ("When expert testimony is necessary to establish the standard of care, a plaintiff's failure to name an expert constitutes grounds for dismissal.").

## B. Negligent Infliction of Emotional Distress

Lesesne also contends that the District of Columbia "acted negligently and with callous disregard of [his] wellbeing causing serious emotional distress." Am. Compl. ¶ 52. In particular, he asserts that the District was negligent "in denying physical and occupational therapy as directed by [Lesesne's] attending physicians" while he was in DOC custody, and thereby, "caused [him] serious emotional distress." Id. ¶ 49. In addition to emotional distress, he maintains that he "has suffered severe and substantial damages," including "medical bills, lost salary . . . , diminished earning capacity . . . , [and] humiliation." Id. ¶ 53.

Under District of Columbia law, a plaintiff may recover for negligent infliction of emotional distress under two tests. The well-established "zone of danger" test allows a plaintiff to recover "for mental distress if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 796 (D.C. 2011) (en banc) (quoting Williams v. Baker, 572 A.2d 1062, 1066 (D.C. 1990) (en banc)). Alternatively, the D.C. Court of Appeals permits NIED claims when a plaintiff was not within the zone of danger but where there is a "special relationship" between the parties:

> [A] plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

Hedgepeth, 22 A.3d at 810–11.

The District of Columbia argues that Lesesne's NIED claim fails because "he cannot establish the underlying negligence." Defs.' Mem. 10. "Without the underlying negligence," the District asserts, "there is no way [to] prove that the District is actually legally responsible for the alleged distress." Id. The District further contends that, in his deposition, Lesesne "concede[d] that the conduct at issue actually did not cause him serious distress," testifying that "[a]t the time [he was] being denied the rehabilitation treatment, . . . [he] was too fucked up to care." Id. (citing Pl.'s Dep. 124:19–125:7). Relying on Hedgepeth, Lesesne responds that the custodial relationship between him and the District constituted a "special relationship" under the NIED standard, and that his deposition statements regarding his reaction to the denial of rehabilitation

6

treatment at the time it was denied do not bear on his emotional response later on, after he had sustained his alleged injuries.

Lesesne thus proceeds under the special-relationship theory of liability under <u>Hedgepeth</u>. But while the court in <u>Hedgepeth</u> did not "catalog all the undertakings or relationships that give rise to a duty to avoid causing emotional distress," 22 A.3d at 812, it stressed that, to qualify as "special," a relationship must involve "the emotional well-being of others . . . at [its] core," or must "necessarily implicate[]" such well-being, <u>id.</u> at 814. Examples the court gave are the relationships between patients and mental-health caretakers and patients and physicians, which directly involve the patients' emotional well-being, and relationships involving a "hospital's false report of death" to a loved one, or "a funeral home's mishandling of a corpse," which necessarily implicate the loved ones' emotional well-being. <u>See id.</u> The court also mentioned appointed guardians and counsel for children, the elderly, and the disabled, as caretakers whose activities have the potential to implicate emotional well-being, but instructed that "court[s] should weigh several factors" to determine "whether such appointments comprise a duty to care for the emotional well-being of wards and clients." <u>Id.</u> In contrast to these relationships, the court pointed to those that involve fiduciary obligations, which will "generally not come within the rule because neither the purpose of the relationship nor the fiduciary's undertaking is to care for the plaintiff's emotional well-being." <u>Id.</u> at 815. Instead, "the object of the engagement is to obtain a financial, commercial or legal objective, even if its non-attainment due to the fiduciary's negligence is emotionally distressing to the client." <u>Id.</u> at 815.

A common thread connecting the above relationships—those that qualify as "special" as well as those that do not—is the exchange of services for the benefit of a client or patient. But the provision of such services alone is not sufficient to establish a special relationship for the

purposes of NIED. The *purpose* of the relationship must involve care for another's emotional well-being, and "emotional distress" must be "especially likely to be caused by [a] breach" of duty. Id. at 814. If the object of the relationship is not such care, but is rather "to obtain a financial, commercial or legal objective," id. at 815, emotional well-being is not necessarily implicated. In other words, even if the purpose of a relationship is to achieve an objective for the benefit of a client, if that objective does not necessarily implicate the client's emotional well-being—even if it has an effect on it—the relationship is not "special" for purposes of NIED.

The purpose of a custodial relationship undertaken by correctional officers is very different from that of the relationships listed above. It is not to provide a benefit to the person in custody, emotional or otherwise. Rather, it is to neutralize a threat allegedly posed by the person in custody, for the benefit of the community. The Court is therefore not convinced that, under Hedgepeth, a custodial relationship undertaken by law enforcement constitutes a "special relationship" for purposes of NIED.

In its opinion with respect to Defendants' motion to dismiss, the Court suggested that it would be possible for Lesesne to allege that the District of Columbia's negligence had placed him within a "zone of danger," causing emotional distress. Although Lesesne does not pursue this argument at the summary judgment stage, the Court concludes that the "zone of danger" test does not apply to these circumstances. "In applying the zone of danger rule, [courts] recognize that its logic requires that the plaintiff's presence in the zone of danger be *contemporaneous* with her fear for her own safety." Jane W. v. President & Dirs. of Georgetown Coll., 863 A.2d 821, 826 (D.C. 2004) (emphasis added) (quoting Jones v. Howard Univ., 589 A.2d 419, 423 (D.C. 1991)) (internal quotation marks omitted). And because Lesesne acknowledges that at the time of the District of Columbia's alleged negligence, he was not in a position "to care" given the

8

treatment he was undergoing—as well as that he did not experience the emotional distress that followed until later—he does not allege that his emotional distress was contemporaneous with his presence in a zone of danger, as required for NIED.

In addition, just as for negligence claims, "expert testimony is needed to prove a claim for negligent infliction of emotional distress." Edwards, 473 F. Supp. 2d at 45; see also Arias v. DynCorp, 752 F.3d 1011, 1018 (D.C. Cir. 2014) (affirming dismissal of an NIED claim due to a lack of expert testimony on whether plaintiffs fell within the "zone of physical danger" from an anti-drug herbicide spraying operation); Farooq ex rel. Estate of Farooq v. MDRB Corp., 498 F. Supp. 2d 284, 287 (D.D.C. 2007) (citing Fletcher, 2005 WL 670676, at *6, for the proposition that summary judgment should be granted on a claim of negligent infliction of emotional distress when the plaintiff fails to present expert testimony on the standard of care owed). And Lesesne has proffered no such testimony. Because Lesesne has not alleged facts showing that the District owed him a duty of care by way of a special relationship or that he experienced contemporaneous distress from being placed in a zone of danger, or presented expert testimony as to his NIED claim, the Court will grant summary judgment as to this claim.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [72] Defendant's Motion for Summary Judgment is GRANTED. This is a final, appealable order.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:   November 25, 2015